RENDERED: DECEMBER 22, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0408-MR

ESTATE OF JAMES A. WALKER, III,
DECEASED, BY AND THROUGH
ANTHONY D. WALKER,
ADMINISTRATOR                                                          APPELLANT


                          APPEAL FROM JEFFERSON CIRCUIT COURT
v.                        HONORABLE BARRY WILLETT, JUDGE
                          ACTION NOS. 16-CI-001179 AND 17-CI-001411


STATE FARM FIRE AND
CASUALTY COMPANY; ALFRED
PIZZONIA, JR.; ERICA T. JACKSON;
JURMAINE L. HENDERSON; AND                                             APPELLEES
ROCKFORD AUTOMOTIVE, INC.

     AND


                          NO. 2021-CA-0478-MR

JURMAINE HENDERSON                                    CROSS-APPELLANT


                   CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE BARRY WILLETT, JUDGE
                    ACTION NOS. 16-CI-001179 AND 17-CI-001411

STATE FARM FIRE AND
CASUALTY INSURANCE
COMPANY; ALFRED PIZZONIA, JR.;
ERICA JACKSON; ROCKFORD
AUTOMOTIVE, INC.; AND THE
ESTATE OF JAMES A. WALKER, III,
DECEASED BY AND THROUGH
ANTHONY D. WALKER,
ADMINISTRATOR                                    CROSS-APPELLEES


OPINION
AFFIRMING APPEAL NO. 2021-CA-0408-MR
AND CROSS-APPEAL NO. 2021-CA-0478-MR

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; ACREE AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  The Estate of James A. Walker, III, deceased, by and through

Anthony D. Walker, administrator (the Estate) brings Appeal No. 2021-CA-0408-

MR from orders entered January 6, 2021, January 27, 2021, and March 16, 2021,

by the Jefferson Circuit Court.  Jurmaine Henderson brings Cross-Appeal No.

2021-CA-0478-MR from the same orders.  We affirm Appeal No. 2021-CA-0408-

MR and Cross-Appeal No. 2021-CA-0478-MR.

On March 21, 2015, Henderson was operating a 2002 Ford Explorer

in Louisville, Kentucky.  Henderson was pulling out of a parking lot and

attempting to cross lanes of traffic when his vehicle collided with a motorcycle

-2-

driven by James A. Walker. Walker died at the scene of the motor vehicle accident.

Subsequently, on March 11, 2016, the Estate filed a complaint (Action No. 16-CI-001179) against Henderson, Erica T. Jackson, Alfred Pizzonia, Jr., Rockford Automotive, Inc. (Rockford) and State Farm Mutual Automobile Insurance Company (State Farm). Therein, the Estate alleged, *inter alia*:

> 4. That at all times relevant hereto, the defendant, Jurmaine L. Henderson, was a resident of Louisville, Jefferson County, Kentucky and, on March 21, 2015, was a permissive user of a 2002 Ford Explorer involved in a collision, which is the subject of this action.
>
> 5. The defendant, Erica T. Jackson, on March 21, 2015, may have been the owner of the 2002 Ford Explorer being driven by Jurmaine L. Henderson and, at all times relevant hereto, was a resident of Louisville, Jefferson County, Kentucky.
>
> 6. That the defendant, Alfred Pizzonia, Jr., on March 21, 2015, may have been the owner of the 2002 Ford Explorer being driven by Jurmaine L. Henderson and, at all times relevant hereto, was a resident of Louisville, Jefferson County, Kentucky, and, at all times relevant hereto, was a commercial automobile dealer.
>
> 7. That the defendant, Rockford Automotive, Inc., is a Kentucky corporation which does business in Louisville, Jefferson County, Kentucky, and, on March 21, 2015, may have been the owner of the 2002 Ford Explorer being driven by Jurmaine L. Henderson and, at all times relevant hereto, was a commercial automobile dealer.
>
> 8. On or about March 21, 2015, at or about 9:31 P.M., James A. Walker, III, was operating his motorcycle

northbound on Seventh Street, a public thoroughfare in Louisville, Jefferson County, Kentucky, when a 2002 Ford Explorer, being driven by Defendant, Jurmaine L. Henderson, failed to yield the right-of-way and travelled into northbound Seventh Street from Southland Terrace in front of the motorcycle being operated by James A. Walker, III, causing said motorcycle to strike the 2002 Ford Explorer being driven by Defendant, Jurmaine L. Henderson.

. . . .

11.   That as a result of the collision aforementioned, the 1008 Suzuki GSX R1000 motorcycle which James A. Walker, III, was operating was so severely damaged that it was a total loss so that the reduction in the fair and reasonable market value of said motorcycle immediately before and after said collision was and is the sum of $9,000.00, all to the damage of the Estate of James A. Walker, III.

. . . .

13.   That the damages to James A. Walker, III[,] and his estate aforementioned are the direct and proximate result of the negligence, carelessness, recklessness, and gross negligence of the defendant, Jurmaine L. Henderson, in operating the 2002 Ford Explorer aforementioned on Seventh Street on March 21, 2015, at or about 9:31 P.M., in Louisville, Jefferson County, Kentucky, in a state of intoxication above the legal limit, thus failing to yield a right-of-way to the motorcycle being operated by James A. Walker, III, and causing the motorcycle being operated by James A. Walker, III, to collide with the 2002 Ford Explorer being operated by Jurmaine L. Henderson.

. . . .

15. That the damages to James A. Walker, III, and the Estate of James A. Walker, III, were the direct and proximate result of the negligence, carelessness, recklessness, and gross negligence of the defendant, Erica T. Jackson, in entrusting said 2002 Ford Explorer to Defendant, Jurmaine L. Henderson, and permitting him to drive a vehicle owned by Erica T. Jackson in light of Jurmaine L. Henderson's driving history and conduct with motor vehicles before March 21, 2015.

. . . .

17. That on or about March 11, 2015, Defendant, Alfred [Pizzonia], Jr., took title to the 2002 Ford Explorer being driven by Jurmaine L. Henderson on March 21, 2015, as a licensed motor vehicle dealer and/or for or on behalf of Defendant, Rockford Automotive, Inc.

18. That before March 21, 2015, Defendant, Alfred Pizzonia, Jr., individually and/or on behalf of Defendant, Rockford Automotive, Inc., may have sold said 2002 Ford Explorer to Defendant, Erica T. Jackson, but, in so doing, failed to comply with [Kentucky Revised Statutes] KRS 186A.220(5) and KRS 186A.215 and in so violating these statutory requirements, Defendants, Alfred [Pizzonia], Jr.[,] and/or Rockford Automotive, Inc., remained the primary owner of the 2002 Ford Explorer on March 21, 2015, for insurance purposes.

19. That on or about March 21, 2015, at about 9:31 P.M. Jurmaine L. Henderson was a permissive user of the subject 2002 Ford Explorer, and Defendants, Alfred [Pizzonia], Jr., and/or Rockford Automotive, Inc., are liable for the damages to James A. Walker, III, and the Estate of James A. Walker, III.

. . . .

21. In the alternative, the damages to James A. Walker, III, and the Estate of James A. Walker, III, were the

-5-

direct and proximate result of the negligence, carelessness, recklessness and gross negligence of the defendant, Alfred Pizzonia, Jr., and/or Rockford Automotive, Inc., acting through its agents, servants and employees, all acting within the course and scope of their employment, in entrusting said 2002 Ford Explorer to Jurmaine L. Henderson and permitting him to drive a vehicle owned by defendants, Alfred Pizzonia, Jr., and/or Rockford Automotive, Inc., in light of Jurmaine L. Henderson's driving history and conduct with motor vehicles before March 21, 2015.

. . . .

26.   That at the time of the automobile collision aforementioned, James A. Walker, III, was insured under policies of insurance through State Farm Mutual Automobile Insurance Company, Policy Number 251 1515-D09-17 and Policy Number 174 2563-A29-17 which afforded coverage for uninsured and underinsured motorist coverage.

27.   At the time and place of the collision aforementioned, the automobile being operated by Jurmaine L. Henderson may have been an uninsured or underinsured motor vehicle as defined under the policies of insurance which the defendant, State Farm, had in effect on March 21, 2015, with James A. Walker, III, as a named insured.

28.   That the injuries and damages sustained by the plaintiffs as set forth above are in excess of the amount of insurance coverage available to Defendants through their liability coverage.

March 11, 2016, Complaint at 3-7 and 9.

Jackson filed an answer and generally denied the allegations set forth in the complaint.  State Farm also filed an answer, as did Pizzonia and Rockford.

-6-

In their answer, Pizzonia and Rockford asserted that the Ford Explorer, involved in the accident and driven by Henderson, was not owned by either of them. Rather, it was claimed that the Ford Explorer was sold to Jackson on February 5, 2015, and at the time of sale, Jackson had insured the Ford Explorer with State Farm.

Eventually, Henderson filed an answer and counterclaim. In the counterclaim, Henderson alleged that Walker's negligence in operating his motorcycle caused the accident and sought damages.

Thereafter, on March 19, 2017, Henderson filed a complaint (Action No. 17-CI-001411) in the Jefferson Circuit Court against State Farm. Therein, Henderson claimed that as a result of Walker's negligent operation of his motorcycle, Henderson suffered bodily injuries, pain and suffering, and lost wages. Henderson also asserted that he was a permissive user of the Ford Explorer and that State Farm had insured the Ford Explorer at the time of the accident. Henderson sought basic reparation benefits and underinsured motorist coverage from State Farm. State Farm filed an answer and denied that it insured the Ford Explorer at the time of the accident.

Meanwhile, in Action No. 16-CI-001179, State Farm sought to file an intervening complaint. The court granted the motion, and on October 4, 2017, State Farm filed a complaint for Declaratory Judgment against Henderson, Jackson, Pizzonia, and Rockford. In the complaint, State Farm asserted:

10.     On or about February 15, 2015 Erica Jackson insured a 2002 Ford Explorer VIN #:1FMZU74K82UD65839 (hereinafter "the Ford Explorer") with State Farm Fire and Casualty Company.

11.     On March 12, 2015, Erica Johnson removed the 2002 Ford Explorer from her State Farm policy and replaced the vehicle with a 2000 Chevrolet Impala.

12.     On March 21, 2015, Intervening Defendant, Alfred Pizzonia, Jr., held legal title to the Ford Explorer.

13.     On March 21, 2015, Jurmaine Henderson was the operator of the Ford Explorer, when it was involved in a motor vehicle collision with a motorcycle operated by Plaintiffs' decedent, James A. Walker, III.

. . . .

15.     Jurmaine Henderson and Erica Jackson have sought both indemnity and a defense from State Farm for the allegations contained in Plaintiffs' Complaint.

16.     Jurmaine Henderson has asserted a claim for basic reparation benefits and/or underinsured motorist benefits from State Farm as a result of the March 21, 2015[,] motor vehicle collision.

17.     An actual controversy exists as to whether Jurmaine Henderson had permission to use the Ford Explorer at the time the March 21, 2015[,] collision occurred.

18.     An actual controversy exists because coverage has been sought under a policy insurance which is not applicable to the March 21, 2015[,] collision and State Farm believes that it has no contractual obligation to extend basic reparation benefits, indemnity coverage or to provide a defense for any claims arising out of the subject collision.

September 27, 2017, Complaint for Declaratory Judgment at 2-3.

In Action Nos. 16-CI-001179 and 17-CI-001411, State Farm subsequently filed motions to consolidate. Both courts agreed to the consolidation and by order entered November 13, 2018, the case was consolidated before Judge Willett who was presiding in Action No. 16-CI-001179.[1]

After the actions were consolidated, State Farm filed a motion for summary judgment. State Farm maintained that the material facts were undisputed that the Ford Explorer was not insured by State Farm at the time of the accident on March 21, 2015. In particular, State Farm argued:

> On or about February 5, 2015, Erica Jackson contacted the Greg Haus State Farm Agency and applied for insurance on the 2002 Ford Explorer bearing vehicle identification number 1FMZU74K82UD65839 which is the subject of this litigation. Policy number 269 0356-B05-17 was issued effective on that date with Erica Jackson identified as the named insured. [State Farm policy, including Declarations Page attached hereto as Exhibit "A"] These facts are undisputed.
>
> On March 12, 2015, Erica Jackson contacted the Greg Haus State Farm Agency and directed that the insurance coverage on the 2002 Explorer be removed and instead applied to a 2000 Chevrolet Impala bearing vehicle identification number 2G1WH55K6Y9117943.

---

[1] State Farm Fire and Casualty Company filed the Motion to Consolidate in Action No. 17-CI-001411 on August 10, 2018. By order entered September 26, 2018, Judge Lavery ordered the consolidation and transfer to Division One (Case No. 16-CI-001179), subject to Judge Willett's acceptance of the consolidated action. Judge Willett accepted the transfer and consolidation by order entered November 13, 2018.

Per the policy holder's request, on that date, policy number 269 0356-B05-17 was switched to cover the 2000 Chevrolet Impala. [See Affidavit of State Farm Insurance Agent Greg Haus Exhibit "B"]. A new Declarations page, covering the Chevrolet Impala was issued on March 12, 2015, replacing the coverage which had been previously placed on the Ford Explorer on February 5, 2015. [Declarations Page applicable to Chevrolet Impala attached hereto as Exhibit "C"] As a result, effective March 12, 2012, the 2002 Ford Explorer was uninsured.

Defendant Jackson agrees that she cancelled the State Farm insurance on the 2002 Ford Explorer before the March 21, 2015 accident. Ms. Jackson's cancellation was effectuated by making a phone call to State Farm. While Ms. Jackson cannot recall the specific date of the phone call, she has no reason to believe that the phone call was not made on March 12, 2015. [Erica Jackson depo., pp. 68, 100-101.] There are no facts, evidence or testimony in this matter to suggest that Erica Jackson did not remove the insurance from the 2002 Ford Explorer on March 12, 2015. As such, this fact is undisputed.

On April 9, 2015 – after the March 21, 2015 accident – Erica Jackson contacted the Greg Haus State Farm Agency and requested that they add insurance on the 2002 Ford Explorer. State Farm policy number 273 2765- D09-17 was issued on April 9, 2015. [See Affidavit of State Farm Insurance Agent Greg Haus Exhibit "B"; and Declarations Page dated April 9, 2015 attached hereto as exhibit "D"] This policy, issued after the March 21, 2015 collision cannot apply to the March 21, 2015 collision. This fact is undisputed.

In short, Ms. Jackson requested that State Farm remove the insurance coverage on the . . . 2002 Explorer before the subject accident. Questions regarding whether Ms. Jackson owned the vehicle, had negligently entrusted the vehicle to Jurmaine Henderson, or had taken

possession of the vehicle are irrelevant to State Farm's motion for summary judgment. While State Farm insured the 2002 Ford Explorer both before and after the March 21, 2015, collision, it was not insured on the date of the collision. There was no coverage between March 12, 2015, the date Ms. Jackson removed the coverage and April 9, 2015, the date that she insured the vehicle for a second time.

April 14, 2020, Memorandum at 2-3. In support of its summary judgment, State Farm attached the affidavit of Greg Haus, a State Farm agent in Louisville, Kentucky, who handled Jackson's motor vehicle insurance. Haus averred:

2.  On February 5, 2015, Erica Jackson contacted my Agency and applied for automobile liability insurance through State Farm to insure a 2002 Ford Explorer, vehicle identification number 1FMZU74K82UD65839.

3.  Pursuant to Jackson's request, Policy number 269 0356-B05-17 was issues effective February 5, 2015.

4.  On March 12, 2015, Erica Jackson contacted my office and requested a vehicle switch out. Effective March 12, 2015, the coverage which had been on the 2002 Ford Explorer was switched to a 2000 Chevrolet Impala bearing vehicle identification number 2G1WH55K67911943.

5.  In accordance with Erica Jackson's request, the 2002 Ford Explorer was not insured with State Farm effective March 12, 2015.

6.  On April 9, 2015, Erica Jackson contacted my office and requested that we reinsure the 2002 Ford Explorer bearing vehicle identification number 1FMZU74K82UD65839.

-11-

7. Through my agency, State Farm issued policy number 273 2765-D09-17 on April 9, 2015[,] thereby reinsuring the 2002 Ford Explorer effective that date.

Affidavit of Greg Haus 1-2.

The Estate filed a response. The Estate pointed to Jackson's answer to Interrogatory No. 8 as follows:

Defendant Jackson states that at the time of the subject accident, she had a liability policy issued by State Farm Mutual Automobile Insurance Company with coverage limits of $25,000.00, Policy No. 2690-356-17A. Defendant Jackson states that she is not aware of any resignation of her right or conditional defenses.

Erica's Answers to Interrogatories at 4. The Estate also cited to Jackson's deposition where Jackson stated that she did not remember if she cancelled the motor vehicle insurance with State Farm before or after the accident. The Estate also argued that Jackson produced a temporary auto identification card, which plainly showed that the Ford Explorer was covered by a motor vehicle insurance policy issued by State Farm for the period from February 5, 2015, through April 5, 2015. Thus, the Estate maintained that material issues of fact were presented that precluded summary judgment.

Henderson also filed a response and argued that material issues of fact existed upon the issue of insurance coverage by State Farm. Henderson contended that summary judgment was premature as discovery was still ongoing and that he

-12-

sought to depose the "PIP adjustor" but State Farm failed to respond. Henderson also pointed out that in Jackson's deposition, Jackson admitted that she was unsure as to the truth surrounding insurance coverage on the Ford Explorer.

The circuit court heard arguments on the motion for summary judgment. State Farm highlighted the affidavit of State Farm Agent Haus, who averred that insurance coverage on the Ford Explorer was transferred to another vehicle before the accident at Jackson's request. The Estate argued that the facts were disputed as to whether the State Farm's insurance policy was in force at the time of the accident on March 21, 2015. The Estate pointed to a document it received from Kentucky Transportation Cabinet entitled Insurance Verification Vehicle Insurance Details (Insurance Verification). According to the Estate, the Insurance Verification evidenced that the Ford Explorer was insured by State Farm from February 27, 2015, through August 5, 2015.

By order entered January 6, 2021, the circuit court granted State Farm's motion for summary judgment. The circuit court concluded that no material issues of fact existed as to coverage on the Ford Explorer at the time of the accident:

> Having reviewed the record and relevant legal authorities, the Court finds that no genuine issue of material fact exists and that State Farm is entitled to prevail on its claim for declaratory relief as a matter of law. The evidence presented by State Farm shows that it no longer insured the 2002 Ford Explorer after March 12,

-13-

2015, the date on which Mr. Haus' agency switched coverage to a 2000 Chevrolet Impala at Ms. Jackson's request. Given that the switch occurred nine days prior to the collision, the coverage on the 2002 Ford Explorer was no longer in effect when the collision occurred. For that reason, State Farm has no contractual obligation to defend or indemnify Ms. Jackson or Mr. Henderson with respect to any claims arising from the collision.

None of the evidence relied upon by the Walker Estate or Mr. Henderson creates a genuine issue of material fact as to whether Ms. Jackson had coverage on the 2002 Ford Explorer prior to the collision. The only policy referenced by Ms. Jackson in her answers to interrogatories was the policy on the 2000 Chevrolet Impala. The proof-of-insurance cards do not show that the coverage on the 2002 Ford Explorer was still effective at the time of the collision. Each one of them also plainly states that it "is invalid if the policy for which it is issued lapses or is terminated." Given the evidence in the record to the contrary, the Court does not accept Ms. Jackson's testimony as proof that she had coverage on the 2002 Ford Explorer prior to the collision. Ms. Jackson's testimony does nothing to rebut State Farm's evidence that she removed coverage on the 2002 Ford Explorer prior to the collision, given that she both admits and denies being able to remember that she removed coverage on the 2002 Ford Explorer prior to the collision. No amount of credibility or lack of credibility could lead a reasonable jury to interpret Ms. Jackson's testimony as denying that she removed coverage on the 2002 Ford Explorer prior to the collision. Because the only other evidence in the record on this issue shows that Ms. Jackson did remove coverage on the 2012 [sic] Ford Explorer prior to the collision, State Farm is entitled to summary judgment.

Order at 4-5 (citations omitted).

The January 6, 2021, order granting summary judgment was later amended by the circuit court to include full finality language pursuant to Kentucky Rules of Civil Procedure (CR) 54.02.  The Estate then filed the direct appeal (No. 2021-CA-0408-MR), and Henderson filed the Cross-Appeal (No. 2021-CA-0478-MR).  We will address Appeal No. 2021-CA-0408-MR and Cross -Appeal No. 2021-CA-0478-MR simultaneously as both appeals raise similar contentions of error.

To begin, summary judgment is proper where there exists no material issue of fact and movant is entitled to judgment as a matter of law.  *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991).  All facts and inferences therefrom are to be viewed in a light most favorable to the nonmoving party.  *Steelvest, Inc.*, 807 S.W.2d 476.  If there are no factual issues, a summary judgment looks only to questions of law whereupon we review a trial court's decision to grant summary judgment *de novo*.  *Brown v. Griffin*, 505 S.W.3d 777, 781 (Ky. App. 2016).  Our review proceeds accordingly.

<u>APPEAL NO. 2021-CA-0408-MR</u>
<u>AND</u>
<u>CROSS-APPEAL NO. 2021-CA-0478-MR</u>

The Estate and Henderson contend that the circuit court improperly rendered summary judgment determining that the Ford Explorer was not insured by State Farm at the time of the accident on March 21, 2015.  The Estate and

-15-

Henderson particularly argue that a material issue of fact was created by Jackson's answer to Interrogatory No. 8; wherein, she stated that the Ford Explorer was insured by State Farm at the time of the accident.

In Jackson's deposition, Jackson testified that she removed the insurance coverage on the Ford Explorer before March 21, 2015, and also testified that she could not remember if she removed the coverage before March 21, 2015. When asked why her testimony kept changing as to insurance coverage on the Ford Explorer at the time of the accident, Jackson explained that she "was trying to help my cousin [Henderson] get out of trouble."

So, it is undisputed that Jackson gave multiple contradictory sworn statements as to when she cancelled the State Farm insurance coverage on the Ford Explorer. The circuit court recognized Jackson's duplicity after considering Jackson's depositional testimony and Jackson's answer to Interrogatory No. 8. This led the circuit court to conclude that "[n]o amount of credibility or lack of credibility can lead a reasonable juror to interpret Ms. Jackson's testimony as denying that she removed coverage on the 2002 Ford Explorer prior to the collision."

The circuit court may not consider the credibility of witness testimony when reviewing a summary judgment motion. *See Amos v. Clubb*, 268 S.W.3d 378, 382 (Ky. App. 2008). However, in this case, Jackson's inconsistent and

contradictory statements as to coverage cannot create a material issue of fact precluding summary judgment, especially where Jackson admitted that she was trying to help the defendant Henderson avoid liability in this case. Simply stated, a party cannot merely create a material issue of fact by giving multiple contradictory sworn statements. *Cf. Lipsteuer v. CSX Transp., Inc.*, 37 S.W.3d 732, 736 (Ky. 2000). If so, a party could survive summary judgment and proceed to trial by intentionally offering misleading and inconsistent sworn statements. We, thus, believe that Jackson's answer to Interrogatory No. 8 and her conflicting deposition testimony did not create a material issue of fact as to insurance coverage to preclude summary judgment.

The Estate and Henderson also maintain that two Temporary Auto Identification Cards (Temporary Cards) issued by State Farm create a material issue of fact as to whether the Ford Explorer was covered by insurance on March 21, 2015. The Estate and Henderson point out that the first Temporary Card shows an effective date of February 5, 2015, through April 5, 2015, and the second temporary card shows an effective date of April 9, 2015, through June 7, 2015. The Estate and Henderson argue that the first Temporary Card evidences that the Ford Explorer was covered by State Farm on March 21, 2015, and the second Temporary Card raises the question as to "why [State Farm] would issue a

-17-

Temporary Auto Identification Card on a vehicle [Ford Explorer] which was a total loss on March 21, 2015." Estate Brief at 18.

Upon review of the first Temporary Card, it is clear that State Farm issued motor vehicle insurance upon the Ford Explorer, effective February 5, 2015, through April 5, 2015. The insured is listed as Jackson. The second Temporary Card is similar to the first except the insurance coverage is effective April 9, 2015, through June 7, 2015. Additionally, on both Temporary Cards, it specifically states that "[t]his card is invalid if the policy for which it was issued lapses or is terminated."

In this case, the parties agree that Jackson initially obtained insurance coverage on the Ford Explorer on February 5, 2015. And, State Farm provided Haus's affidavit; wherein, he averred that Jackson terminated the insurance coverage on the Ford Explorer by telephone on March 12, 2015. Therefore, the salient issue concerns whether Jackson terminated insurance coverage on the Ford Explorer on March 12, 2015, before the accident. Neither Temporary Card creates a material issue of fact as to whether coverage was terminated by Jackson on March 12, 2015. The first Temporary Card merely reflects that insurance coverage began on February 5, 2015 (which is undisputed) and continued until April 5, 2015, provided it was not terminated by Jackson. And, the second Temporary Card only demonstrates that the Ford Explorer was insured on April 9, 2015, by

Jackson. Again, such evidence does not show whether Jackson terminated insurance on the Ford Explorer before the accident. Consequently, we do not believe the Temporary Cards create a material issue of fact that would preclude entry of summary judgment.

The Estate and Henderson also claim that an Insurance Verification document received from the Transportation Cabinet clearly raises a material issue of fact as to whether the Ford Explorer was insured by State Farm at the time of the accident (March 21, 2015). According to the Estate and Henderson, the Insurance Verification plainly shows that State Farm had issued insurance coverage upon the Ford Explorer for the period from February 27, 2015, through August 5, 2015.

In this case, the record reveals that the Insurance Verification document was produced by the Transportation Cabinet. Upon its face, the policy holder is identified as Jackson, and the Ford Explorer is listed under vehicle information. Additionally, under policy information, the policy number is 1722690356001, with an effective date of February 27, 2015, and expiration date of August 5, 2015. Toward the top of the Insurance Verification is an action date of April 6, 2015, and the action listed is "delete."

The Estate, Henderson, and State Farm dispute the import and effect of the Insurance Verification document. However, no affidavit was submitted by any party to explain the Insurance Verification; as a result, we are left to merely

speculate thereupon. Therefore, we agree with the circuit court that the Insurance Verification document does not create a material issue of fact as to coverage.

The Estate and Henderson next assert that the circuit court prematurely rendered summary judgment as discovery was not completed. Henderson maintains that he sought to depose a "PIP adjustor," but no adjustor was produced by State Farm. Henderson Brief at 10. And, the Estate stated that it sought to depose Haus, yet State Farm failed to produce Haus. The Estate points out that it filed an affidavit of counsel per CR 56.06; therein, counsel averred:

> 4. That no discovery from State Farm has been obtained in this action and no deposition of Greg Haus or any other State Farm representatives has been taken.
>
> 5. That the issue of insurance coverage of the 2002 Ford Explorer involved in the collision which is the subject of this action, involves explanation of the contact between Defendant, Erica T. Jackson, and Intervening Plaintiff, State Farm, and its Agent, Greg Haus, as more fully explained in Plaintiff's Response to the Motion for Summary Judgment.
>
> 6. That additional time is needed to obtain discovery regarding the communications between Erica T. Jackson and State Farm through its agent, Greg Haus, pertaining to the insurance coverage of the subject vehicle.
>
> . . . .
>
> 8. That Affiant has been provided copies of correspondence between counsel for Jurmaine

> Henderson and counsel for State Farm in which discovery from State Farm had been previously requested.

Affidavit of Attorney Bixler W. Howland at 2.

> CR 56.06 provides:
>
> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Thereunder, a party may file an affidavit setting forth a valid reason why the party is unable to present facts in opposition to the motion for summary judgment. In this case, counsel for the Estate simply stated that additional time was needed to obtain discovery. In essence, the Estate and Henderson believe that summary judgment was prematurely rendered by the circuit court.

It is well-established that summary judgment may be considered only "after a party has been given ample opportunity to complete discovery[.]" *Pendleton Bros. Vending Inc. v. Commonwealth Fin. and Admin. Cabinet*, 758 S.W.2d 24, 29 (Ky. 1988). The record reveals that the Estate filed its complaint on March 11, 2016, and that Henderson filed his complaint against State Farm on March 19, 2017. And, State Farm intervened in the action filed by the Estate on October 4, 2017. The cases were then consolidated by order entered November 13,

-21-

2018.  The circuit court granted summary judgment by order entered January 6, 2021.  Thus, the Estate had almost five years and Henderson had nearly four years to conduct discovery.  These cases were not overly complicated, and it does not appear that the Estate or Henderson filed any motions with the circuit court to compel discovery.  Upon the whole, we conclude that the Estate and Henderson had ample opportunity to conduct discovery.  *See Pendleton Bros. Vending*, 758 S.W.2d at 29.

The Estate and Henderson further argue that summary judgment was precluded by violation of Kentucky Ethics Opinion KBA E-452.  For the following reasons, we disagree.

Kentucky Ethics Opinion KBA E-452 concerns representation of an insured in a "combined litigation" scenario, where liability of the insured and coverage of the insured under the insurance contract are simultaneously litigated.  And, Kentucky Ethics Opinion KBA E-452 particularly seeks to advise attorneys who are hired by the insurance companies to represent the insureds in such "combined litigation" scenarios.  It provides, in relevant part:

> [T]he parties and the court do not bifurcate the coverage issues and stay the litigation on those issues until determination of the liability issues, then a lawyer may not represent the insured on the tort or other liability claim defense and leave the lawyer's client exposed and unrepresented on the policy claims.  Without the putative insured having counsel to advise the insured in the combined policy and liability litigation, either personally

-22-

retained or through additional counsel retained by the carrier for that purpose, the retained liability defense counsel is put in an untenable position. Under KBA Ethics Op. 410, a carrier retained defense lawyer may not represent the insured on the policy claims in either separate or combined proceedings. But at the same time a lawyer representing a client cannot act in the "best interests of the insured" during combined discovery, pretrial, and trial proceedings defending solely on the tort or other liability claims, leaving the lawyer's client without the advice of counsel and unrepresented on significant litigation issues that will be taking place right in front of the lawyer and are of significant importance to the client.

Kentucky Ethics Opinion KBA E-452. The ethics opinion was rendered on September 18, 2020, and was not raised as an issue before the circuit court until after entry of summary judgment on January 6, 2021. The issue was untimely raised and we question its retroactive effect in this case and perhaps hundreds of other cases rendered in years past. It may well be that Jackson's counsel hired by State Farm violated Kentucky Ethics Opinion KBA E-452, and if so, Jackson may have recourse with the Kentucky Bar Association. However, we cannot discern and are offered no cogent legal reasoning upon how such violation precludes summary judgment in this case.

The Estate and Henderson lastly maintain that the circuit court erroneously rendered summary judgment upon the issue of whether State Farm was

estopped from denying insurance coverage.[2] Specifically, the Estate and Henderson argue that State Farm did not notify Jackson that its defense of the liability claim was undertaken with a reservation of rights, so it could later challenge coverage under the insurance policy.

In Kentucky, the law is well-settled that where an insurer defends the insured without a reservation of rights, such insurer may be estopped from later denying coverage. *Ky. Farm Bureau Mut. Ins. Co. v. Brewer*, 596 S.W.3d 620, 622 (Ky. 2020); *Hood v. Coldway Carriers, Inc.*, 405 S.W.2d 672, 673 (Ky. 1965). The Court of Appeals has explained this rule:

> Under Kentucky law, an "insurer has a duty to defend if there is any allegation which potentially, possibly or might come within the coverage of the policy." *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991). An insurer that decides not to defend because it believes there is no coverage risks that coverage will later be found and it will be liable for "all damages naturally flowing from" the failure to provide a defense. *Eskridge v. Educator and Executive Insurers, Inc.*, 677 S.W.2d 887, 889 (Ky. 1984). However, the insurer has another option.
>
> An insurer that believes there may be no coverage can decide to defend the claim and litigate the coverage issue later. In that circumstance, the insurer normally

[2] In its appellee briefs filed in Appeal No. 2021-CA-0408-MR and Cross-Appeal No. 2021-CA-0478-MR, State Farm Fire and Causality Insurance Company (State Farm) affirmatively states that the above estoppel issue was not raised by either the Estate of James A. Walker, III, Deceased by and through Anthony Walker, Administrator or by Jurmaine L. Henderson in their respective prehearing statements. This Court has reviewed the prehearing statements and has found that the issue was set forth in both prehearing statements.

preserves its right to challenge coverage at a later date by a reservation of rights letter. *Aetna Cas. & Sur. Co. v. Commonwealth*, 179 S.W.3d 830, 841 (Ky. 2005). If an insurer issues a reservation of rights letter to an insured, the insured has the option of accepting the insurer's defense or refusing the defense and conducting his own defense. *Med. Protective Co. of Fort Wayne, Indiana v. Davis*, 581 S.W.2d 25, 26 (Ky. App. 1979). A timely reservation of rights is significant because without it, the insurer may be estopped from denying coverage after it has defended the insured for a prolonged period.

*Brewer*, 596 S.W.3d at 622.

In this case, Jackson submitted an answer to interrogatories; wherein, she stated that State Farm did not notify her of any reservation of rights. In Jackson's deposition, she also reaffirmed that she had received no reservation of rights letter from State Farm. However, the reservation of rights issue was not <u>fully</u> presented to the circuit court for a decision. Hence, as an appellate court, we are limited to reviewing and deciding only those issues which were fully presented to the trial court below. *Ritchie v. Turner*, 559 S.W.3d 822, 834 (Ky. 2018). This Court is simply "without authority to review issues not raised in or decided by the trial court." *Norton Healthcare, Inc. v. Deng*, 487 S.W.3d 846, 852 (Ky. 2016).[3]

For example, in response to State Farm's motion for summary judgment, the Estate briefly references that Jackson testified regarding the

---

[3] One exception to this rule would arise where the law was not properly applied or applicable controlling legal authority was not followed by the trial court. *Cmty. Fin. Servs. Bank v. Stamper*, 586 S.W.3d 737, 740-41 (Ky. 2019).

reservation of rights issue but makes no substantive argument to the circuit court regarding the same. Similarly, in the Estate's CR 59.05 motion to vacate the summary judgment, no reference is made to the reservations of rights issue. The Estate also responded to State Farm's motion to make the summary judgment final and appealable, by again making a one sentence reference to the reservation of rights issue but without any substantive argument. Henderson also made no reference to the reservation of rights issue in his response to State Farm's motion for summary judgment or in his motion to set aside the judgment. Accordingly, their being no substantive argument fully presented to the circuit court on the reservation of rights issue, we will not review the same in this appeal.

We view any remaining contentions of error as moot or without merit.

For the foregoing reasons, the orders entered January 6, 2021, January 27, 2021, and March 16, 2021, by the Jefferson Circuit Court in Appeal No. 2021-CA-0408-MR and Cross-Appeal No. 2021-CA-0478-MR are affirmed.

ALL CONCUR.

BRIEFS AND ORAL ARGUMENT
FOR APPELLANT/CROSS-
APPELLEE ESTATE OF JAMES A.
WALKER, III, BY AND THROUGH
ANTHONY D. WALKER,
ADMINISTRATOR:

Bixler W. Howland
Louisville, Kentucky

BRIEF AND ORAL ARGUMENT
FOR CROSS-
APPELLANT/APPELLEE
JURMAINE HENDERSON:

Jeri Barclay Poppe
Louisville, Kentucky

BRIEFS AND ORAL ARGUMENT
FOR APPELLEE/CROSS-
APPELLEE STATE FARM FIRE
AND CASUALTY INSURANCE
COMPANY:

Renee G. Hoskins
Louisville, Kentucky